**Papetti Samuels Weiss McKirgan LLP**
Scottsdale Quarter
15169 North Scottsdale Road
Suite 205
Scottsdale, AZ 85254

**Jared Sutton** (State Bar No. 028887)
Direct Dial: 480.800.3527
Email: jsutton@PSWMlaw.com

**Jennifer Lee-Cota** (State Bar No. 033190)
Direct Dial: 480.800.3528
Email: jleecota@PSWMlaw.com

*Attorneys for Plaintiff Best Western International, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| 1Nonly Phi Mar, LLC, Philip Levine and Jane Doe Levine, individuals, | |
| Defendants. | |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against 1Nonly Phi Mar, LLC., Philip Levine ("Levine" individually, and together "Defendants") and Jane Doe Levine, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Best Western is a non-profit corporation organized under Arizona law with its headquarters located in Phoenix, Arizona.

2. Upon information and belief, Defendant 1Nonly Phi Mar, LLC ("1Nonly") is a Texas limited liability company with its principal place of business in Dallas, Texas.

3. Upon information and belief, the members of 1Nonly are residents of Dallas, Texas.

4. Upon information and belief Levine is a resident of Dallas, Texas.

5. Defendant Jane Doe Levine is Defendant Levine's spouse and upon information and belief, is also a resident of Dallas, Texas. Defendant Jane Doe Levine is named solely for community property purposes.

6. Defendant 1Nonly executed a Best Western Membership Agreement on April 19, 2019, pursuant to which, among other things, it agreed that all disputes arising from or related to the membership application process, the membership agreement, or termination of membership would be resolved exclusively in the state or federal courts in Maricopa County, Arizona.

7. Defendant 1Nonly designated Defendant Levine as the Voting Member for the membership. As Voting Member, he agreed to be bound by the terms in the Membership Agreement.

8. This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because: (1) Best Western is an Arizona non-profit corporation with its principal place of business in Phoenix, and its witnesses are either located in Phoenix or available in Phoenix; (2) Defendants are citizens of Texas; (3) the amount in controversy exceeds $75,000.00; (4) there are no matters pending between the parties in any other jurisdiction; and (5) Defendants executed a contract that contained a forum-selection clause requiring all disputes arising from that contract to be resolved by a state or federal court in Arizona and according to Arizona law.

9. The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, Defendants expressly agreed to litigate all disputes with Best Western arising from or related to the contracts with Best Western, or any relationship between the parties, in state or federal courts located in Maricopa County, Arizona.

**GENERAL ALLEGATIONS**

10. Best Western is a hotel-industry, service organization that operates on a cooperative basis by and for its hotelier members, which are independent owners and operators of Best Western® branded hotels.

11. Best Western provides its members with a reservations system and marketing campaigns, as well as an option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "Best Western Services"), among other services that members can elect to purchase.

12. The rights and obligations of Best Western's members are determined by the member hotels and are set forth in the Membership Agreement, Best Western's Bylaws & Articles (the "Bylaws"), Best Western's Rules and Regulations (the "Rules and Regulations"), Board Policies, and other Best Western "Regulatory Documents," as that term is defined in Best Western's Bylaws (collectively the "Regulatory Documents").

13. In exchange for receiving Best Western Services, Best Western members are obligated to, among other things, pay annual dues, monthly fees, membership fees, and other assessments/charges, and to abide by all obligations as may be established from time to time in the Regulatory Documents, which are expressly incorporated by reference into the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ A(1)-(2).)

14. The membership fees are due on December 1 of each year but are billed, as a courtesy, in monthly installments over the course of the following year to accommodate members.

15. Annual dues are charged in August of each year. All other dues, fees, charges, and assessments are billed monthly.

16. Pursuant to the Membership Agreement and Regulatory Documents, Defendants agreed to, "to timely pay all fees, dues, charges, and assessments imposed generally on the Membership by the Best Western Board of Directors ('Board') or the

3

Membership, and the cost of all goods and services provided by or ordered through Best Western," that "[p]ast due amounts shall bear interest at the rate of one and one half percent (1.5%) per month from the due date until paid, provided that such interest charge shall in no way authorize or excuse late payments or limit Best Western's rights and remedies against Member," that "[a]ny Member may resign from the Membership at any time, but if a Member resigns or is terminated, fees and dues for the remainder of the Initial Term (if still in the Initial Term) or for the remainder of any Renewal Term (if beyond the Initial Term) become immediately due and payable." (*See* Ex. A, Membership Agreement ¶ A(2), F(4); Ex. B, Bylaws, Art. II § 5(B).)

17.  The Bylaws and Rules and Regulations are expressly incorporated by reference into the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ A(1) and E.)

18.  Each Best Western member is authorized to use the trade name, trademarks, service marks, logos, and other intellectual property and similar identifying symbols owned by Best Western (the "Best Western Marks") in connection with its hotel pursuant to a limited, non-exclusive license (the "Best Western License"), which is set forth in the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ C.)

19.  The Best Western License allows the member to use the Best Western Marks in connection with the Hotel, subject to the terms of the Best Western License, and only for the duration of the Best Western membership. (*Id. See also id.* at ¶ E, F(1)–(3).)

**DEFENDANTS' BEST WESTERN MEMBERSHIP**

20.  Defendant 1Nonly applied for a Best Western membership for a hotel located at 8051 Lyndon B. Johnson Freeway in Dallas, Texas, known as the "Best Western Plus Dallas Hotel & Conference Center." (the "Hotel").

21.  Defendant 1Nonly executed a Membership Application and Agreement on April 19, 2019. Defendant Levine executed the Membership Agreement on 1Nonly's behalf as its "Manager." (*See* Ex. A, Membership Agreement at p. 16.)

4

22. Defendant 1Nonly designated Defendant Levine as its Voting Member. As the Voting Member, Defendant Levine agreed to "be bound by the Membership Application and Agreement executed in connection with" the Hotel. (*See id.*, ¶ K, & at Ex. A, Addendum A.)

23. Having accepted that designation, Levine certified that he understood and agreed to meet Best Western membership requirements, and that he agreed to be personally liable for the responsibilities of the Hotel's Best Western affiliation, including the Membership Agreement and Regulatory Documents. (*Id.*)

24. Defendants were, and are, jointly bound by the Membership Agreement and Regulatory Documents. (*See*, Ex. A, Membership Agreement ¶ K.)

25. Each month Best Western sent Defendants monthly invoices with respect to the membership for the Hotel. Those invoices included an "aging summary," showing the current balance due, any amounts past due by 30 days, any amounts past due by 60 days, any amounts past due by 90 days, and any amounts past due by 120 days or more. Many charges were billed in arrears for reservation activity that occurred the month before.

26. Best Western sent Defendants several letters concerning outstanding amounts that Defendants owed with respect to the membership for the Hotel and past due balances were shown in the "aging summary" of their monthly statements. (Ex. C, Letter dated July 14, 2021; Ex. D, Letter dated August 10, 2021; Ex. E, Letter dated September 15, 2021; Ex. F, Monthly Statements for July 2021 to August 2021.

27. On September 17, 2021, Levine notified Best Western via e-mail that Defendant 1Nonly was terminating its membership, effective September 21, 2021. (Ex. G, E-mail dated September 17, 2021).

28. On September 21, 2021, Best Western sent a letter to Defendants confirming the request for self-termination, and asked Defendants to make arrangements as soon as possible to satisfy the outstanding balances owed on the Best Western account

5

and for the fees, dues, and charges owed for the remainder the fiscal year as per the Membership Agreement.  (Ex. H, September 21, 2021 Letter.)

29. To date, Defendants have not paid these balances.

30. Following the self-termination, Best Western has continued to send Defendants an invoice each month showing the outstanding sums (with interest) owed. (Ex. F, at October 1, 2021 to March 1, 2022 Monthly invoices).

31. On November 2, 2021, Best Western sent a demand letter to Defendants with respect to the outstanding amounts owed to Best Western as provided in the Membership Agreement and Regulatory Documents, which described the amounts for pre-termination services, liquidated damages, and interest with a total owed of $374,694.99.  Of this amount $328,275.75 related to services and fees incurred by Defendants prior to its self-termination plus interest, and $11,543.08 represented the liquidated damages owed by Defendants under the Membership Agreement for the early termination.  (Ex. I, 11/9/21 Letter.)

32. In its November 2, 2021 letter, Best Western invited a discussion about the amounts owed, but Defendants did not respond.  (*Id*.)

33. To date, Defendants have failed to pay as required by the Membership Agreement and Regulatory Documents.  As of March 1, 2022, the total account balance, with accrued interest, is $395,907.95 (*See* Ex F, Monthly Statements from July 2021 to March 2022).  The outstanding balance includes fees for services provided to Defendants by Best Western prior to cancellation as specified in the Membership Agreement of $328,275.75, liquidated damages as specified in the Membership Agreement for the early termination of $11,543.08, and interest as specified in the Membership Agreement.

34. As of the date of the complaint, Defendants still have not paid Best Western for their outstanding account balance.  With service charges for non-payment, as set forth in the Membership Agreement, the outstanding account balance will grow each month.

6

### COUNT I – BREACH OF CONTRACT

35. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

36. The Membership Agreement is a valid, binding and enforceable contract.

37. Defendants have refused to and continue to refuse to pay Best Western the amounts due and owing as required by the Membership Agreement.

38. Best Western fully performed its obligations under the parties' contract.

39. Defendants' performance under the parties' contract was not excused.

40. To date, Defendants have failed to pay as required by the Membership Agreement and Regulatory Documents. As of March 1, 2022, the total account balance, with accrued interest, $395,907.95 (Invoices from July 1, 2021- March 1, 2022). The outstanding balance includes fees for services provided to Defendants by Best Western prior to cancellation as specified in the Membership Agreement of $155,488.89, liquidated damages as specified in the Membership Agreement of $83,598.10, and interest as specified in the Membership Agreement.

41. Pursuant to the express terms of the Membership Agreement, interest has accrued and continues to accrue on the unpaid amounts at 1.5% per month until paid in full.

### COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

42. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

43. The Membership Agreement is a valid, binding, and enforceable contract.

44. The agreement contains an implied covenant of good faith and fair dealing.

45. Defendants' conduct, as described herein, constitutes a breach of the covenant of good faith and fair dealing implied in the contract.

7

46. As a direct and proximate result of Defendants' misconduct and failure to perform the parties' contract, Best Western has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Best Western International, Inc. seeks judgment against Defendants, jointly and severally, as follows:

    A.    An award to Best Western of its damages in an amount to be proven at trial;

    B.    Attorneys' fees and costs pursuant to the Membership Agreement, A.R.S. §§ 12-341 and 12-341.01, and any other applicable law;

    C.    Pre- and post-judgment interest; and

Any other relief the Court deems just and proper.

DATED this 16th day of March, 2022.

**PAPETTI SAMUELS WEISS MCKIRGAN LLP**

*/s/ Jennifer Lee-Cota*
Jared Sutton
Jennifer Lee-Cota

*Attorneys for Plaintiff Best Western International, Inc.*

E-filed March 16, 2022.

*T. Beltran*
Employee of Papetti Samuels Weiss McKirgan LLP

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254